**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **NANCY COLEMAN ex. rel., J.C., a minor,** | ) | |
| | ) | |
| **Plaintiff-Claimant,** | ) | |
| | ) | **No. 11 C 50276** |
| **v.** | ) | |
| | ) | **Iain D. Johnston** |
| **CAROLYN W. COLVIN, Acting** | ) | **Magistrate Judge** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant-Respondent.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Nancy Coleman, on behalf of her minor son J.C. (hereinafter, "Claimant"), brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision by Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"),[1] denying Claimant's application for supplemental security income ("SSI") benefits. This matter is before the Court on cross-motions for summary judgment [Dkt. #18, 21].

Claimant argues that the Commissioner's decision denying his application for SSI should be reversed or remanded for further proceedings because the Administrative Law Judge ("ALJ") provided a deficient functional equivalence determination regarding his ability to acquire and use information, attend and complete tasks, and interact and relate to others, and erroneously determined that Claimant's combination of impairments did not meet or medically equal Listing 112.05. For the reasons set forth more fully below, Claimant's motion for summary judgment [Dkt. #18] is granted in part and the Commissioner's motion for summary judgment [Dkt. #21] is

---

[1] Commissioner Carolyn W. Colvin has been automatically substituted as the Defendant-Respondent pursuant to Federal Rule of Civil Procedure 25(d).

1

denied. The Commissioner's decision is reversed, and this matter is remanded to the Social

Security Administration ("SSA") for further proceedings consistent with this Memorandum

Opinion and Order. On the present record, this Court declines to remand with an order to award

benefits.

In reviewing denials of Social Security benefits, the Court understands that it cannot

reweigh the evidence presented to the SSA or engage in *de novo* review. But the Court also

recognizes that it cannot rubber-stamp the Commissioner's decision. Instead, the Court must

engage in a critical review of the evidence. In doing so, the Court needs to assure itself that the

ALJ's decision possesses a logical bridge to the conclusion. Part of the "logical bridge" analysis

requires the ALJ to confront evidence that is contrary to the ALJ's ultimate conclusion and

explain why that evidence was insufficient. The ALJ cannot merely turn a blind eye to that

evidence, which is what occurred here. *See Ribaudu v. Barnhart*, 458 F.3d 580, 583 (7th Cir.

2006); *Tyson v. Astrue*, 08-CV-383-BBC, 2009 WL 772880, at *10 (W.D. Wis. Mar. 20, 2009).

## I. BACKGROUND

### A. Procedural History

Claimant filed an application for SSI benefits on March 25, 2009, alleging a disability

onset date of February 3, 2009, due to developmental delays. R. 99-103, 125. Claimant's

representative, on behalf of the Claimant, later amended his onset date to April 13, 2009. R. 33.

The Commissioner denied the application initially on July 30, 2009, and upon reconsideration on

December 3, 2009. R. 28-29. Claimant filed a timely written request for a hearing on December

10, 2009. R. 65-67. The ALJ conducted a video hearing on August 19, 2010. R. 8. Claimant and

his mother attended the hearing and testified. 10-18. Counsel represented the Claimant at his

hearing. R. 10.

On August 20, 2010, the ALJ issued a decision denying the claim for benefits. R.17-29.

Claimant filed a timely request to review the ALJ's decision on October 5, 2010. R. 7.  The

Appeals Council denied review on July 28, 2011, making the ALJ's decision the final decision of

the Commissioner. R. 1-6.  Claimant subsequently filed this appeal pursuant to 42 U.S.C. §

405(g).  Claimant's objections to the ALJ's decision are limited to 1) her findings in the domains

of acquiring and using information, attending and completing tasks, and interacting and relating

to others; and 2) her determination that Claimant does not meet the criteria set forth in Listing

112.05.  Accordingly, the Court will focus on the facts in the record related to those findings.

### B. Hearing Testimony

#### 1.  Nancy Coleman – Claimant's Mother

Ms. Coleman testified that Claimant was six years old at the time of the hearing before

the ALJ on August 19, 2010. R. 4.  She testified that he repeated kindergarten due to his

developmental delay, and started first grade two weeks before the date of the hearing. R. 13, 15.

She testified that Claimant was not enrolled in any special education classes, but that he received

speech and language therapy during the school year. R. 13-14, 20.  Ms. Coleman testified that

Claimant received 30 minutes of therapy from a specialist during the school year, but she was

unsure whether the therapy was daily or weekly. R. 14, 20.  Claimant did not receive any speech

or language therapy over the summer break. R. 18.  She had not noticed any improvement in

Claimant's speech or articulation despite the therapy. R. 14.  Ms. Coleman estimated that she

could understand approximately eighty percent of Claimant's speech, explaining that Claimant

had trouble with his letters and trying to get the words out. R. 19.

Ms. Coleman further testified that Claimant struggled with his nightly homework because

it was "not clicking". R. 15.  She testified that it took Claimant two to three hours to complete his

first grade homework assignments. R. 15.  Although Claimant did not play organized sports, he participated in physical education at school. R. 17.  Additionally, Claimant attended a half-day art camp over the summer where he learned how to dance and rap. R. 17-19.  Claimant also swam and rode his bike over the summer break. R. 17-18.

According to Ms. Coleman, Claimant had friends at school and got along well with others. R. 15-16, 21.  Claimant generally behaved well, although he had one incident at school the week before the hearing where he was not paying attention to the teacher and he was throwing items around the room. R. 16.  Ms. Coleman also testified that Claimant's teacher told her that in the past, Claimant had problems with his classmates because they did not understand what he is saying. R. 21.

Ms. Coleman further testified that Claimant helped her around the house with chores. R. 16.  He had no problems with bathing, but Ms. Coleman had to remind Claimant to brush his teeth and help him get dressed. R 16-17.  Claimant could pay attention and watch a movie if he liked the movie. R. 18.  Claimant did not use a computer or play video games. R. 18.

Ms. Coleman told the ALJ that Claimant had not been prescribed any medication to treat his disability. R. 21.  Claimant had his adenoids and tonsils removed, but his speech did not improve after the surgery. R. 21.

**2. Claimant**

Claimant testified that he was in first grade and had two teachers. R. 23.  He testified that he liked to learn, read, and play football, basketball, and on the swings with friends at school. R. 23-24.  Claimant named two friends, but testified that his friends sometimes teased him when they could not understand him. R. 23.  He also testified that he played with his siblings and his dog after school. R. 24.  Claimant testified that he attended speech and language therapy at

school and completed his homework nightly with help from his mother. R. 25-26.  Claimant

testified that the speech and language therapy helped him. R. 26.

**C. *School Records***

Claimant attends Haskell Year-Round Academy in Rockford, Illinois. R. 257.  He

received speech therapy since the age of three. R. 180.  The school completed its first of two

special education evaluations and developed an Individual Education Plan ("IEP") for Claimant

on March 6, 2009. R. 256-288.  Claimant was in kindergarten at the time of the first IEP.  At that

time, Claimant was receiving 200 minutes per week of special education, 75 minutes per week of

speech and language therapy, and 60 minutes per month of counseling services to help cope with

the death of his older brother.  Claimant's teachers described Claimant as a happy, friendly, and

outgoing child.  Claimant listened well, finished his assigned tasks, and followed directions.

However, his teacher noted that the Claimant was extremely difficult to understand at times due

to his speech and language difficulties. R. 256-288.

The record includes two teacher questionnaires that were completed in 2009 by

Claimant's kindergarten teacher, Dianne Larson, NCBT.  The questionnaires contained 10

categories in the domain of acquiring and using information, 13 categories in attending and

completing tasks, and 15 categories in interacting and relating with others. The questionnaires

asked the teacher to rank Claimant's functioning in each category on a scale of 1 through 5.  1

indicated "no problem"; 2 indicated "a slight problem"; 3 indicated "an obvious problem"; 4

indicated "a serious problem"; and 5 indicated a "very serious problem."  R. 133-136.

The first questionnaire completed by Ms. Larson on May 21, 2009 showed some

problems, primarily in the acquiring and using information domain.  In this domain, Ms. Larson

indicated that Claimant had very serious problems in 2 categories; serious problems in 1

category; obvious problems in 1 category, slight problems in 4 categories, and no problems in 2 categories. Ms. Larson marked "no problems" in all of the other domains. However, she noted in the interacting and relating with others domain that she could understand less than half of what Claimant said when the topic was known or when he repeated himself, and very little of what he said when the topic was unknown. R. 133-137.

The second questionnaire completed by Ms. Larson on November 4, 2009 showed an improvement in acquiring and using information but new problems in 3 of the other domains that were not present at the time of the first questionnaire. In the acquiring and using information domain, Ms. Larson indicated that Claimant had serious problems in 3 categories, obvious problems in 1 category, and slight problems in the remaining 6 categories. She reported that Claimant stayed focused in small groups, but lost focus when working independently. Ms. Larson noted serious problems in 5 categories of the attending and completing tasks domain, obvious problems in 1 category, and slight problems in the remaining 6 categories. In the domain of interacting and relating with others, Ms. Larson noted very serious problems with "using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation", serious problems in 2 categories, slight problems in 3 categories, and no problems in the remaining 7 categories. She noted that she could understand very little of what Claimant said when the topic of conversation was known and after Claimant repeated or rephrased his thought. For attending and completing tasks, his teacher noted serious problems in 5 categories, obvious problems in 1 category, and slight problems in the remaining 6 categories. Ms. Larson recorded no problems in any of the moving about and manipulating objects domain, but noted that Claimant's fine motor skills were very low. In the caring for himself domain, Ms. Larson noted serious problems in 1 category, obvious problems in 3 categories, slight problems in 4

6

categories, and no problem in 1 category. She noted that Claimant appeared depressed and was performing below grade level in his school work. R. 167-174.

Claimant had another IEP conference in March, 2010. Claimant was again in kindergarten at the time of the second IEP in 2010, having been held back after his first year. R. 13. The IEP recommended that Claimant receive more hours of services than he received in the prior year, including 300 minutes per week of special education, 60 minutes per week of speech and language therapy, and 75 minutes per month of counseling services. The IEP noted that Claimant "has really improved" and was meeting expectations in several areas of study, but not reading, comprehension, writing, and math. His receptive language scores were in the average range and he continued to progress in his articulation skills. Claimant's IEP also called for testing accommodations. R. 198-217.

Claimant's report card for the 2009 to 2010 school year showed that he was meeting expectations in several areas of study, but not in reading, comprehension, writing, and some math. The report card indicated that Claimant had "really improved". After his final trimester, his teacher indicated that Claimant "works hard and does a wonderful job" in his subjects and although he did not pass with a "c" level in reading (the target for his grade level), he passed with a strong "b". R. 231-232.

**D.** *Medical Evidence*

Claimant saw Dr. Puneet Kakkar, M.D. at University Family Health Center for a physical. Dr. Kakkar indicated that Claimant had a developmental delay and ear/hearing problem, and cleared Claimant to participate in physical education. Dr. Kakkar noted that Claimant had an adenoidectomy, a tonsillectomy, and tubes placed in his ears, but he was otherwise in good health. R. 315.

During Claimant's first year of kindergarten, he was referred to Harold Bauer, MS-NCSP for a psycho-educational evaluation due to concerns with his speech and language delay. On February 3, 2009, Mr. Bauer met with Claimant and administered part of the Wechsler Intelligence Scale for Children-IV ("WISC-IV") and Bender Visual Motor Gestalt Test. Due to Claimant's difficulties with expressive language, he was only able to complete the non-verbal sections of the WISC-IV. Mr. Bauer indicated that Claimant had a significant speech and language impairment and was very limited in vocalizing and speech sounds. Claimant's processing speed was in the average range. Mr. Bauer indicated that Claimant had average intellectual abilities, but qualified for speech and language assistance. R. 226-230.

Licensed clinical psychologist Dr. John Peggau performed a psychological evaluation on Claimant on July 6, 2009. Dr. Peggau met with Claimant, administered the WISC-IV, and determined that Claimant's intellectual functioning was well below the average range with only three scores as high as the low average range. Claimant obtained a Full-Scale I.Q. score of 70, which put Claimant in the second percentile for his age and in a borderline mentally deficient range. Dr. Peggau noted that Claimant had significant speech impairment and was no more than 70 percent intelligible. Dr. Peggau diagnosed Claimant under the ICD-9/DSM IV as 315.9 learning disability not otherwise specified, and speech impairment. R. 292-295.

Two state agency psychologists separately reviewed Claimant's file and provided opinions as to his functional abilities. Dr. Donna Hudspeth, Ph.D., reviewed Claimant's file in July 2009 and opined that he did not meet, medically equal, or functionally equal a listed impairment. Specifically, she found that Claimant had marked limitations in the domain of interacting and relating with others; less than marked limitations in the domain of acquiring and using information; and no limitations in the remaining domains. In support of her finding that

8

Claimant had less than marked limitations in acquiring and using information, Dr. Hudspeth noted that Claimant's teacher reported some problems in certain areas, but that he performed well in science and social studies and he had made very good progress with expressive language. She also noted Claimant's WISC-IV results from July 2009 and opined that his test scores indicated that he had more potential than he demonstrated. For attending and completing tasks, Dr. Hudspeth noted that his teachers had not noted any limitations. For interacting and relating to others, Dr. Hudspeth determined Claimant was marked in this limitation because Claimant was diagnosed with a speech/language impairment and developmental delay, his teacher reported understanding very little of what he said, and he was receiving special education services for his impairments. R. 297-302.

Dr. Joseph Mehr, Ph.D., reviewed Claimant's file in November 2009 and also opined that he did not meet, medically equal, or functionally equal a listed impairment. Specifically, he found that Claimant had marked limitations in interacting and relating with others; less than marked limitations in acquiring and using information, attending and completing tasks, moving about and manipulating objects, and caring for oneself; and no limitations in health and physical well-being. In support of his finding that Claimant had less than marked limitations in acquiring and using information, Dr. Mehr affirmed Dr. Hudspeth's findings and also noted that Claimant was functioning below grade level. Dr. Mehr opined that Claimant was less than marked in attending and completing tasks because although Claimant had some slight difficulties, he stayed focused in small groups. Dr. Mehr affirmed Dr. Hudspeth's findings in interacting and relating with others. R. 303-308.

Finally, Claimant underwent a speech and language evaluation with George Stevens M.A., CCC-SLP. Mr. Stevens noted that Claimant had a muffled and retracted vocal quality and

a marked frontal lisp.  He was unable to diagnose a specific etiology for Claimant's articulation

disorder.  Mr. Stevens recommended intensive speech therapy for Claimant. R. 222-224.

### E. The ALJ's Decision – October 26, 2010

After a hearing and review of the medical evidence, the ALJ determined that Claimant

was not disabled and denied his application for SSI benefits. R. 33. The ALJ evaluated

Claimant's application under the requisite three-step sequential evaluation process to determine

whether he was disabled. R. 33-36.  The ALJ noted that Claimant was a preschooler when he

filed his application for benefits and was school-age at the time of the hearing. R. 36. At step

one, the ALJ found that Claimant had not engaged in substantial gainful activity since April 13,

2009, the application date. R. 36. At step two, the ALJ determined Claimant had the following

severe impairments: learning disorder and speech/language impairment. R. 36. At step three, the

ALJ concluded that Claimant did not have an impairment or combination of impairments that

met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R.

36. The ALJ stated that Claimant's impairments did not meet Listings 112.02 (Organic Mental

Disorders) or 112.05 (Mental Retardation). R. 36. Critically, the ALJ did not state what evidence

she relied upon to infer this result.

The ALJ also found that Claimant did not have an impairment or combination of

impairments that functionally equaled listings 20 C.F.R. 416.924(d) or 416.926(a). R. 37. In the

six relevant functional equivalence domains, the ALJ found that Claimant had less than marked

limitations in the domains of acquiring and using information; attending and completing tasks;

interacting and relating with others; moving about and manipulating objects; and health and

physical well-being. R. 41-45, 47.  In the remaining domain, caring for oneself, the ALJ found

that Claimant had no limitations. R. 46. Because the ALJ found that Claimant had either less than marked or no limitations all of the domains, the ALJ found that he was not disabled, as defined by the Social Security Act, as of April 13, 2009. R. 47.

In finding that Claimant had less than marked limitations in acquiring and using information, the ALJ noted that Claimant's teacher "reported only slight problems with understanding vocabulary, providing organized explanations, recalling previously learned material, and applying problem solving skills in class." R. 42. She noted that Claimant had "noted problems" in learning new material, and very serious problems with reading and comprehending written material and problems. R. 42. However, the ALJ contended that Claimant's issues do not rise to the level of marked in this domain because Claimant was enrolled in general education classes. R. 42.

The ALJ based her less than marked finding in the attending and completing tasks domain on Claimant's cooperation in school and during his psychological evaluation. R. 43. She acknowledged that Claimant's teacher reported that Claimant had some difficulty remaining focused when working independently. R. 43.

In finding that Claimant had less than marked limitations in interacting and relating with others, the ALJ explained that Claimant had friends at school, got along well with others, attended and enjoyed summer camp, and was respectful to his teachers and adults. R. 44. The ALJ noted that Claimant had some difficulty communicating because of his speech/language impairment, but that at least eighty percent of his speech was understandable. R. 44.

The ALJ did not specify how much weight she assigned information provided by Claimant's mother. R. 41. However, she noted that while Claimant's mother was "mostly credible", the evidence as a whole did not support a disabling condition. R. 41. The ALJ

11

assigned great weight to the opinion of Dr. John Peggau as an examining medical source. R. 41.
The ALJ assigned substantial weight to the opinions of the Rockford School District's examining
non-medical sources, Harold Butler and Janna Tuminaro. R. 41.  The ALJ assigned some weight
to the opinions of the agency's non-examining medical consultants, Dr. Donna Hudspeth and Dr.
Joseph Mehr, and to the opinions of Claimant's teacher, Diane Larson. R. 41.

## II. LEGAL STANDARD

### A. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision
of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C.
§405(g).  This much is clear regarding the standard of review.  If supported by substantial
evidence, the Commissioner's factual findings are conclusive. 42 U.S.C. §405(g).  If the Appeals
Council denies a request for review, the ALJ's decision becomes the Commissioner's final
decision, reviewable by the district court.  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).  But
beyond these axiomatic statements, the courts have provided seemingly conflicting guideposts.

At one end of the spectrum, court opinions have held that the standard of review is
narrow.  *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (review is "extremely limited"). The
district court's review is limited to determining whether substantial evidence supports the
Commissioner's decision and whether the Commissioner applied the correct legal standard in
reaching the decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Schoenfeld v. Apfel*,
237 F.3d 788, 792 (7th Cir. 2001).  Substantial evidence exists if there is enough relevant record
evidence that would allow a reasonable mind to determine that the decision's conclusion is
supportable.  *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971).  Accordingly, the reviewing

court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Indeed, on review, the courts will give the decision a commonsensical reading and not pick nits. *Rice v. Barnhart*, 389 F.3d 363, 369 (7th Cir. 2004). Moreover, a decision need not provide a complete written evaluation of every piece of testimony and evidence. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). If reasonable minds could differ concerning whether a claimant is disabled, then the court must affirm so long as the decision is adequately supported. *Elder*, 529 F.3d at 413.

At the other end of the spectrum, courts, including the Seventh Circuit, have been careful to emphasize that the review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). For example, a "mere scintilla" is not substantial evidence. *Id.* Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).[2] And, unlike most civil litigation in which a decision can be affirmed on any basis in the record, federal courts cannot do so in Social Security appeals. *Compare Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir.

---

[2] To further show the seeming conflict, scores of cases rely upon the "logical bridge" analysis and language to remand decisions to the Commissioner. *See, e.g. Shauger v. Astrue*, 675 F.3d 690, 697-98 (7th Cir. 2012); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). But the "logical bridge" analysis was never meant to compel a hypercritical approach. *Mueller v. Astrue*, 860 F.Supp.2d 615, 619 (N.D. Ill. 2012). Indeed, the Seventh Circuit has provided the following pedestrian explanation of how an ALJ's decision establishes a logical bridge: "[T]he ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger*, 516 F.3d at 544.

2010) ("[T]he *Chenery* doctrine . . . forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced.") *with Brosted v. Unum Life Ins. Co.*, 421 F.3d 459, 467 (7th Cir. 2005) ("[W]e can affirm on any basis in the record"). Therefore, the Commissioner's counsel cannot build for the first time on appeal the necessary accurate and logical bridge. *See Parker*, 597 F.3d at 925; *Toft v. Colvin*, 2013 U.S. Dist. LEXIS 72876, *21 (N.D. Ill. 2013) ("[T]he court's review is limited to the reasons and logical bridge articulated in the ALJ's decision, not the post-hoc rational submitted in the Commissioner's brief.").

### B. Disability Standard for a Child

A child is disabled within the meaning of the Social Security Act if the child is not engaged in substantial gainful activity and "has a medically determinable physical or mental impairment or combination of impairments that causes marked or severe functional limitations, and that can be expected to cause death or that has lasted and can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.903. The ALJ applies a three-step sequential evaluation to determine whether an individual under the age of 18 is disabled. 20 C.F.R. § 416.924(a). Under this process, the ALJ must inquire, in the following order, whether: (1) Claimant is engaged in substantial gainful activity; (2) Claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe"; and (3) Claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing, or that functionally equals the listing. *Id*.

To functionally equal a listing, the impairment must cause a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a(a). The domains of functioning are: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About

and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. 20

C.F.R. § 416.926a(b)(1)(i)-(vi). An "extreme" limitation occurs when the impairment interferes

very seriously with claimant's ability to independently initiate, sustain or complete activities. 20

C.F.R. § 416.926a(e)(3)(i). A "marked" limitation occurs when the impairment interferes with

Claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. §

416.926(e)(2)(i).

## III. DISCUSSION

### A. Contentions of the Parties

In asserting that the ALJ's decision was not supported by substantial evidence, the

Claimant contends that the matter should be remanded for two (2) reasons. Claimant's

objections to the ALJ's decision are limited to: 1) her finding that Claimant had less than marked

limitations in three domains and the analysis and evidentiary support for that finding; and 2) her

finding that Claimant 's combination of impairments did not meet or medically equal Listing

112.05 for mental retardation.

Claimant first objects to the ALJ's finding that Claimant had less than marked limitations

in the domains of acquiring and using information, attending and completing tasks, and

interacting and relating to others, and the analysis and evidentiary support for that finding.

Claimant argues that the ALJ erred in finding that he had less than marked limitations in these

three domains, and that the record supports a finding of marked limitations in these domains.

Claimant raises the following issues: (1) the ALJ failed to address evidence contrary to her

finding that Claimant had a less than marked limitation in these three domains; (2) the ALJ failed

to adequately explain her findings; (3) the ALJ did not analyze the "whole child" as required by

SSR 09-1p-2p; and (4) the ALJ improperly failed to have a medical expert ("ME") at the hearing.

Second, Claimant argues that the ALJ erroneously determined that Claimant's condition did not satisfy the requirements for a finding of disability under Listing 112.05(d) for mental retardation. Claimant argues that the ALJ failed to address evidence contrary to her finding, specifically Dr. Peggau's determination that Claimant had a Full-Scale IQ score of 70.

The Commissioner contends that the ALJ's findings are supported by substantial evidence in the record as a whole. The parties do not take issue with the ALJ's findings as to the remaining two domains. Accordingly, this Court's analysis is limited to the record evidence, testimony, and the ALJ's findings related to Claimant's ability to acquire and use information, attend and complete tasks, and interact and relate to others, and whether Claimant 's combination of impairments did not meet or medically equal Listing 112.05 for mental retardation.

## B. Analysis

Claimant argues, and the Court agrees, that the ALJ's analysis of the domains of functioning was deficient. The ALJ failed to address records conflicting with her findings, and failed to build a logical bridge supporting her conclusion. Additionally, the ALJ erred by failing to properly analyze whether Claimant's impairments or combination of impairments met or medically equaled Listing 112.05. However, in light of the Court's disposition of the case on the aforementioned grounds, the Court declines to address whether the ALJ properly analyzed the "whole child" as required by SSR 09-1p-2p and whether a ME was necessary at the hearing.

### 1. Limitations in Acquiring and Using Information

First, the ALJ failed to properly analyze Claimant's level of functioning in the domain of acquiring and using information. "Acquiring and using information refers to how well a child

16

acquires or learns information and how well [he] uses the information [he] has learned."

*Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009)(citing C.F.R. § 416.926a(g)).

A school-age child, between the ages of 6 and 12, should be able to learn to read, write, and do

math, and discuss history and science. 20 C.F.R. § 416.926a(g)(2)(iv). He should also be able to

use those skills in academic situations to demonstrate what he has learned. *Id*. For instance, he

should be able to produce oral and written projects, solve math problems, and take tests. *Id*. He

should also be able to apply those skills to daily living situations at home and in the community.

*Id*.

      Several aspects of the ALJ's analysis of this domain are deficient. The Seventh Circuit

has held that "the ALJ must consider 'all relevant evidence' and may not analyze only that

information supporting the ALJ's final conclusion." *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir.

2000) (citing *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000)). Although the ALJ is not

required to articulate her reasons for rejecting every piece of evidence, she must at least

minimally discuss evidence that contradicts the Commissioner's position. *Id*. In this case, the

ALJ did not explain why she did not credit portions of the record that were favorable to

Claimant. *See Hopgood ex rel. L.G.*, 578 F.3d at 700; *Murphy v. Astrue*, 496 F.3d 630, 634-35

(7th Cir. 2007).

      In analyzing this domain, the ALJ only refers to a portion of Ms. Larson's teacher

questionnaires from 2009. She explained that Ms. Larson reported mostly slight problems in this

domain with "noted" problems in one category and very serious problems in reading and

comprehension of written material and problems. The ALJ reasoned that the Claimant was

enrolled in general education classes, so he was not marked in this domain. R. 42. However, the

March 2010 IEP report highlighted Claimant's continuing problems in the domain of acquiring

and using information and his qualification for and placement in 300 minutes per week of special education classes for the school year running from March 2010 through March 2011. R 198-221.[3] This constituted a 50 percent increase in the amount of special education services that he received the prior school year. Moreover, Claimant's 2010 report card indicated that Claimant was not meeting expectations in several areas of study, including his core classes. R. 231-232. In her decision, the ALJ did not address the extent to which, if at all, this additional information impacted her finding of less than marked in this domain. On these facts, the ALJ did not build a logical bridge to her conclusion that Claimant had less than marked limitations in acquiring and using information. *See Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004). On remand, the ALJ should analyze and explain why she did not credit the findings in his teacher questionnaires and the IEP reports that Claimant had serious and very serious problems in this domain. *See Giles ex. rel. Giles v. Astrue*, 183 F.3d 483, 488 (7th Cir. 2007).

Moreover, SSR 09-2p provides that an ALJ "should analyze and evaluate relevant evidence for consistency, and resolve any inconsistencies that need to be resolved." Claimant's documented limitations mirrored the indicators for limitations in the domain of "acquiring and using information." Those indicators include poor grades, inconsistent academic performance, receipt of special education services, speech/language services, and testing accommodations. *See* SSR 09-3p. On remand, the ALJ should explain why this evidence does not support a finding of a marked limitation in the domain of "acquiring and using information." A fundamental

---

[3] The record contains conflicting evidence regarding whether Claimant was enrolled in special education classes. Claimant's mother testified that Claimant was not enrolled in special education classes for the 2010 to 2011 school year. R. 13-14, 20. However, Claimant's 2010 IEP indicates that he qualified for and was scheduled to receive 300 minutes per week of special education, to be performed inside regular education. R. 215. To the extent that the ALJ was mistaken regarding Claimant's enrollment in special education, a major basis for finding that Claimant was not marked in this domain was erroneous. At a minimum, the ALJ had the duty to address this conflicting evidence when rendering her opinion. *See Godbey*, 238 F.3d at 808.

requirement of a logical bridge analysis is the decision's explaination why contrary evidence does not persuade. *See Berger*, 516 F.3d at 544.

### 2. Limitations in Attending and Completing Tasks

The ALJ's analysis of Claimant's level of functioning relating to attending and completing tasks is likewise flawed. In the attending and completing tasks domain, the regulations provide that the SSA considers, "how well [school-age children] are able to focus and maintain [their] attention and how well [they] begin, carry through, and finish activities, including the pace at which [they] perform activities and the ease with which [they] change them." 20 C.F.R. § 416.926a. School-age children "should be able to focus [their] attention in a variety of situations in order to follow directions, remember and organize [their] school materials, and complete classroom and homework assignments… [and] concentrate on details and not make careless mistakes in [their] work…" 20 C.F.R. § 416.926a.

In analyzing this domain, the ALJ noted that Claimant had difficulty in maintaining attention and concentration to complete tasks when working independently, but that Claimant was "cooperative" in school and during his psychological evaluation. The ALJ failed to note and address other strong evidence in the record that contradicts her finding. For instance, Claimant's teacher reported numerous attention problems, including serious problems in 5 categories of this domain and obvious or slight problems in all of the remaining categories. R. 169. Moreover, Dr. Peggau determined that the Claimant was in the low average range for processing speed and noted Claimant's difficulty with completing tasks that measured his skills in this domain. R. 293-294.

The ALJ must explain "why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies." *Giles ex rel. Giles*, 483 F.3d at 488. In the instant case, this

has not occurred. The ALJ did not explain why the opinions of Ms. Larson and Dr. Peggau were insufficient to find a marked limitation in attending and completing tasks. The only evidence that the ALJ cited to support her finding in this domain was the Claimant's cooperation in school and during psychological testing. Cooperation alone is not a sufficient basis for finding less than marked in this domain, particularly when the record contains strong evidence indicating that Claimant may be marked in this domain. *Murphy*, 496 F.3d at 634-35 (finding that the facts that the ALJ discussed, including school documents which reflected that the claimant was cooperative and wanted to do well, "did little to counter" claimant's impairment in the attending and completing tasks domain.)

The Court recognizes that there is evidence in the record weighing against a finding of marked in this domain. For example, the 2009 IEP indicated that Claimant listened well, finished his assigned tasks, and followed directions. R. 287. The WISC-IV results from Mr. Bauer indicated that Claimant was in the average range for processing speed. R. 228. However, other evidence contained in the record that supports the finding and cited in the Commissioner's brief cannot be used now to seek affirmance on appeal. *Smith v. Astrue*, 467 F. App'x 507, 510-11 (7th Cir. 2012). The Court cannot build the logical bridge for the ALJ. *See id*. at 510-11 ("An ALJ must explain her reasoning, building a so-called "logical bridge" that connects the evidence and her decision.") The ALJ erred by failing to cite this evidence and by not adequately explaining how this evidence, and other substantial evidence in the record, supported her finding. *Id*.

### 3. Limitations in Interacting and Relating to Others

The ALJ further erred in finding Claimant's limitations in the domain of interacting and relating with others was less than marked. The interacting and relating to others domain

20

measures "how well a child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others." *Hopgood ex rel. L.G.*, 578 F.3d at 702 (citing 20 C.F.R. § 416.926a(i)). Children aged 6 to 12 "should be able to develop more lasting friendships with children who are [their] age…understand how to work in groups to create projects and solve problems…have an increasing ability to understand another's point of view and to tolerate differences…be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." 20 C.F.R. § 416.926a(i)(2)(iv). A child "must be able to speak intelligibly and fluently so that others can understand [him]; participate in verbal turntaking and nonverbal exchanges; consider others' feelings and points of view; follow social rules for interaction and conversation; and respond to others appropriately and meaningfully." 20 C.F.R. § 416.926a(i)(1)(iii). "The regulations do not require a complete impairment, only serious interference, to qualify as a marked limitation." *Hopgood ex rel. L.G.*, 578 F.3d at 703 (citing 20 C.F.R. § 416.926a(e)(2)(i)).

In finding that Claimant had less than marked limitations in interacting and relating with others, the ALJ explained that Claimant had friends at school, got along well with others, attended and enjoyed summer camp, and was respectful to his teachers and adults. R. 44. The ALJ noted that Claimant had *some* difficulty communicating because of his speech/language impairment, but that at least eighty percent of his speech was understandable. R. 44.

As noted above, two DDS medical consultants, Drs. Hudspeth and Mehr, completed separate assessments of Claimant's functioning levels and both concluded that Claimant had a marked limitation in the interacting and relating to others domain. R. 302, 308. Moreover, Claimant's teacher Ms. Larson indicated that she could understand *very little* of what Claimant

21

said when the topic of conversation was known and after Claimant repeated or rephrased his thought. R. 171.  Regarding his psycho-educational evaluation, Mr. Bauer could only complete the non-verbal sections of the WISC-IV due to Claimant's significant speech and language impairment and limitations in vocalizing and speech sounds.  Even Dr. Peggau noted that Claimant had significant speech impairment and was no more than 70 percent intelligible. R. 295.  Despite this strong evidence of a marked finding in this domain, the ALJ found that Claimant was less than marked because he was sociable, respectful, and cooperative. R. 44. Additionally, based alone on Claimant's brief testimony during the hearing (comprising only 5 pages in the transcript), the ALJ also independently determined that the at least 80 percent of Claimant's speech was intelligible. R. 44.

First, the ALJ did not mention any medical opinions when analyzing this domain. Instead, the ALJ made only a generic reference that Claimant had "some difficulty" communicating because of his speech/language impairment.  The ALJ made no citation to any of the medical reports anywhere in her domain analysis. That is particularly problematic, given that Drs. Hudspeth and Mehr opined, contrary to the ALJ's conclusion, that Claimant had a marked limitation in the interacting and relating to others domain.  Accordingly, the ALJ failed to appropriately assess the DDS consultants' medical reports. *See, e.g.,* SSR 96–6p; *Strong ex rel. M.H. v. Astrue*, 11 CV 5922, 2012 WL 6186831, at *11 (N.D. Ill. Dec. 12, 2012).

Second, the ALJ's opinion failed to discuss, much less distinguish, contrary record evidence pertinent to this domain.  Although the ALJ noted that Claimant had "some problems" with speech and language delay, she failed to acknowledge the extent of his problems in this domain, or to even mention that evidence in her analysis of this domain.  As just noted, the ALJ did not address the opinions of Drs. Hudspeth and Mehr that Claimant had a marked limitation in

this domain. Additionally, the ALJ did not address Ms. Larson's reports that she could understand very little at times, and generally less than half, of what Claimant was saying. Ms. Larson worked with Claimant daily for two years, and accordingly had unique insight into his functioning level in this domain. The ALJ erred by failing to explain how this evidence impacted her finding of less than marked in this domain. *Hopgood*, 578 F.3d at 703 (the ALJ erred in his finding of less than marked limitations in the interacting and relating to others domain by relying on claimant's positive relationships with his siblings and friends and his good work ethic in school instead of explaining why he disregarded pertinent information.)

The ALJ's support for her finding in this domain was clearly insufficient. The ALJ concluded that Claimant had a less than marked limitation in this domain because he had friends, got along well with others, went to summer camp, and was respectful without addressing contrary evidence. Moreover, the ALJ seemed to give undue importance to Claimant's testimony during the hearing. The ALJ stated that she understood at least 80 percent of what Claimant said during the hearing. R. 44. However, a review of the record indicates that the vast majority of Claimant's responses to questioning during the hearing were one word answers, such as "yeah" and "no". Out of 49 questions asked to Claimant during the hearing, he responded with one word answers 29 times. The remainder of his responses were either short sentence fragments or were noted as "inaudible" because the court reporter could not understand his responses. His hearing testimony is hardly strong evidence supporting a finding of less than marked in this domain, particularly in light of the other strong contradictory evidence. On remand, the ALJ is reminded of her obligation to confront the evidence that does not support her conclusion and explain why she rejected it. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *see also Bauer v. Astrue*, 730 F. Supp. 2d 884, 894 (N.D. Ill. 2010) (this

23

circuit "soundly disapproves" of an ALJ selectively highlighting favorable portions of the record, rather than weighing the evidence, when reaching her conclusion).

### 4. Analysis of Disability under Listing 112.05 for Mental Retardation

The ALJ found that Claimant's impairment does not meet nor is medically equal to a listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ considered whether Claimant qualified for benefits under two listings, 112.02 for organic mental disorders and 112.05 for mental retardation.[4] Mental retardation under Listing 112.05 is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." *Blakes ex rel. Wolfe v. Barnhart,* 331 F.3d 565, 570 (7th Cir. 2003); 20 C.F.R. Part 404, Subpart P, Appendix 1, Rule 112.05. The regulations require that a claimant meet the diagnostic definition of the listing as well as one of the six sets of criteria to establish disability. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.00A (2001) ("If an impairment satisfies the diagnostic description of the introductory paragraph and any one of the six sets of criteria, we will find that the child's impairment meets the listing."). Under Subsection D, the required level of severity for this disorder is met when the claimant has "a valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." *Id.* at § 112.05(D).

The ALJ's finding that the Claimant did not qualify as disabled because he did not meet listing requirements for 112.05 is extremely brief:

> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404,

---

[4] Claimant did not object to the ALJ's analysis under listing 112.02 for organic mental disorders in his briefs. Because this issue was not raised by Claimant, the Court will not address it. *Bollas v. Astrue,* 694 F. Supp. 2d 978, 990 (N.D. Ill. 2010) ("Issues not raised in a claimant's initial brief are generally waived for purposes of review.")

Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926). The claimant's impairments do not meet listing 112.02 or 112.05.

This perfunctory conclusion, devoid of any analysis, does not enable meaningful judicial review. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 785-86 (7th Cir. 2003) ("Such a lack of reasoning prevents us from applying the decision structure undergirding disability determinations to a substantive analysis of [the claimant's] impairments."). Although the ALJ outlined the requirements of Listing 112.05, she erred by not analyzing Claimant's impairments in conjunction with the Listing. *Id.* Merely identifying the Listing's requirements is not the same as analyzing whether the requirements are met.

Moreover, the ALJ's opinion does not sufficiently discuss the conflicting evidence regarding Claimant's impairments. Most significantly, the opinion fails to mention a key piece of evidence supporting Claimant's claim for benefits under this listing, the 2009 psychological evaluation by Dr. Peggau. Dr. Peggau met with Claimant, administered tests, and determined that Claimant's intellectual functioning was *well below the average range* with only three scores as high as the low average range. R. 293. Claimant obtained a Full-Scale I.Q. score of 70, which puts him in the range for this Listing. Additionally, Claimant suffered from severe speech and language impairments, which also supports his claim under this Listing. The Commissioner argues, and the Court recognizes, that a Full-Scale IQ score of 70 alone is not dispositive evidence that Claimant meets this listing. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.00A; 20 C.F.R. § 416.926a(e)(4)(i). However, the ALJ's opinion is silent as to this evidence. The ALJ has a duty to acknowledge contrary evidence and failed to do so here. *See Blakes ex rel. Wolfe*, 331 F.3d at 568-69. Although it is not dispositive, the ALJ should have discussed not only the results of Dr. Peggau's assessment and Claimant's other severe impairments, but also whether

that evidence meets the requirements of Listing 112.05.  Accordingly, the ALJ's deficient

analysis of this Listing warrants remand. *Adams ex rel. T.H. v. Astrue*, 08 C 7265, 2011 WL

3273124 (N.D. Ill. July 26, 2011) ("[T]he ALJ's failure to cite or analyze Listing 112.05 or

address evidence favorable to the plaintiff requires remand.").

### 5. Other Arguments regarding the Listing Analysis

Finally, Claimant contends that the ALJ did not analyze the "whole child" as required by

SSR 09-1p-2p and failed to have a necessary medical expert ("ME") at the hearing.  The

Commissioner argues that the ALJ properly cited and analyzed Claimant's claim under the

"whole child" approach, and that the record was sufficiently developed for the ALJ to properly

evaluate the Claimant's condition.  However, the Court's disposition in this case makes it

unnecessary to resolve these issues.

## IV. CONCLUSION

For the reasons set forth above, Claimant's motion for summary judgment is granted in

part and the Commissioner's motion for summary judgment is denied.  This case is remanded to

the SSA for further proceedings consistent with the Memorandum Opinion and Order.

It is so ordered.


Date: November 5, 2013            By: _____

                                       Iain D. Johnston
                                       U.S. Magistrate Judge